UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

___

GREGORY HARDY,

        Petitioner,        Case No. 1:05-cv-311

v.        Honorable Paul L. Maloney

LINDA M. METRISH,

        Respondent.

_____/

### REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. After pleading *nolo contendere*, Petitioner was convicted by the Kalamazoo County Circuit Court of first-degree criminal sexual conduct (CSC) on October 23, 1996. The trial court sentenced Petitioner to three and one-half years to fifteen years for the CSC conviction. Petitioner, however, does not challenge his conviction or the imposition of his sentence in his application for habeas corpus relief. Instead, he challenges the revocation and subsequent denials of his parole.

### Facts & Procedural History

On December 27, 2001, Petitioner was released from prison to a three-year term of parole, which was scheduled to expire on December 27, 2004. (Parole Board Record (R), 40-54.) According to the Michigan Department of Corrections (MDOC) Parole Violation Report, Petitioner submitted a urine sample on April 11, 2002, which tested positive for marijuana and cocaine. (R., 31.) Petitioner was subsequently charged and arrested for violating his parole conditions. (R., 29, 38.) Petitioner ultimately pled guilty to count one (use of marijuana) and the parole board dismissed

count two (use of cocaine). (R., 23, 27, 36-38.) As a result, the parole board revoked Petitioner's parole and returned him to the Michigan Department of Corrections. (R., 30.) Petitioner is presently incarcerated at the Ionia Maximum Correctional Facility.

On June 18, 2002, the Michigan Parole Board denied Petitioner's parole for twelve months. (R., 23.) In the MDOC Parole Board Notice of Action, the Michigan Parole Board considered the following comments from Petitioner:

> [Petitioner] states [that] he and his agent did not get along from the beginning and he filed a written complaint. He states [that] most of the PVR [Parole Violation Report] is untrue with the agent attempting to make him look bad (PVR does contain a lot of allegation[s] that [are] uncharged and unsubstantiated.[)]

(R., 23.) On October 14, 2002, the Michigan Parole Board completed the MDOC Parole Guidelines Scoresheet for Petitioner with a score of -13, which equates to a low probability of parole. (R., 16-18.) On December 6, 2002, the Michigan Parole Board denied Petitioner's parole for twelve months without an interview. (R., 14-15.) On December 29, 2003, the Michigan Parole Board also denied Petitioner's parole for twelve months. (R., 6-7.) Petitioner was reconsidered for parole on April 11, 2005. (R., 6.)

In 2004, Petitioner filed a state habeas corpus petition in the Chippewa County Circuit Court, which raised the following grounds for habeas corpus relief: "[i]ncorrect assessment/error of intention and failure to correct which caused Plaintiff/Petitioner to be denied the entire Parole Board Interview Process for December 6, 2002." (Pet. at 3, docket #4.) On May 3, 2004, the trial court denied Petitioner's state habeas corpus petition. Petitioner appealed the trial court's decision to the Michigan Court of Appeals. *See Hardy v. Parole Bd.,* Case No. 259202 (Mich. Ct. App. Mar. 30, 2005). On March 30, 2005, the Michigan Court of Appeals denied Petitioner's delayed

application for leave to appeal for lack of merit in the grounds presented. (*Id.*) It does not appear that Petitioner filed an appeal in the Michigan Supreme Court. (Pet. at 3.)

In June 2004, Petitioner filed two actions for habeas corpus relief in the Eastern District of Michigan. Both cases essentially raised the same claims. The instant case, *Hardy v. Metrish,* Case No. 2:04-cv-72114, was filed on or about June 9, 2004. The United States District Court in the Eastern District of Michigan transferred the case to this District on April 25, 2005.

Petitioner filed a second case, *Hardy v. Sherman,* Case No. 2:04-cv-72371, in the Eastern District of Michigan on or about June 30, 2004. The Eastern District of Michigan also transferred the second case to this District on June 30, 2004. On November 8, 2004, this Court dismissed *Hardy v. Sherman,* Case No. 2:04-cv-233, without prejudice for Petitioner's failure to exhaust his available state court remedies because he had one available procedure by which to raise his unexhausted claims. At that time, Petitioner could have file a delayed application for leave to appeal the Chippewa County Circuit Court's decision in the Michigan Court of Appeals. Even if Petitioner currently has one available remedy by which to raise his unexhausted claims, the Court may deny an application for habeas corpus relief on the merits notwithstanding the failure of the applicant to exhaust his state court remedies. *See* 28 U.S.C. § 2254(b)(2). Because Petitioner's claims are without merit, the Court does not need to resolve the issue of exhaustion.

Petitioner's application for habeas corpus relief is somewhat unclear, but it appears that Petitioner is challenging both the revocation and subsequent denials of his parole. As stated verbatim from his petition, Petitioner raises the following grounds for habeas corpus relief:

> Ground one:  (e) Petitioner was re-incarcerated by the Parole Agent for one dirty urine test results. Supporting FACTS. . . :  Petitioner is not being held for the technical rule violation itself, but for the false and misleading disclosure of his Parole

>   Violation Report, that such changes were unsubstantiated so the Michigan Parole Board through purpose and intent issued false parole guidelines scoring sheet to hold him.
>
>   Ground two: (g) Petitioner was released on December 27, 2002: on the original charge. Supporting FACTS. . . : Petitioner admitted to one technical rule violation of a dirty urine test results: Petitioner could have been offered other alternative programming before being placed back into incarceration, but because the (P.A)'s bias for the crime committed.
>
>   Ground three: (j) Due to a reasoned change of law Parole Appeals are no-longer allowed. Supporting FACTS. . . : Petitioner filed a writ of habeas corpus in the Chippewa Co. Court and the Judge through a misconception of discretion misconstrued my pleading to be based on revocation: and dismissed:

(Pet. at 4.)[1] Respondent filed an answer to the petition (docket #11) stating that Petitioner's grounds for habeas corpus relief should be denied because they are unexhausted, noncognizable state law claims, which have no merit. Upon review and applying the AEDPA standards, I find that all of Petitioner's grounds for habeas corpus relief are without merit. Accordingly, I recommend that the petition be denied.

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 791 (2001), *cert. denied, Texas v. Penry*, 547 U.S. 1200 (2006). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas

---

[1] In his second ground for habeas relief, Petitioner states that he was released on parole on December 27, 2002. According to the Michigan Parole Board's records, Petitioner was released on parole on December 27, 2001. (*See* R., 40-54.)

corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

       The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).  "Yet, while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final."  *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

       A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal

principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *See Harris*, 212 F.3d at 943; *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Where the circumstances suggest that the state court actually considered the issue, the review is not *de novo*. *Onifer*, 255 F.3d at 316. The review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Harris*, 212 F.3d at 943. However, the Sixth Circuit recently has clarified that where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts *de novo* review. *McKenzie*, 326 F.3d at 727 (limiting *Harris* to those circumstances in which a result exists to which the federal court may defer); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*,

340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

### Discussion

A.   **Ground I:  False Information in Parole Violation Report**

In his first ground for habeas relief, Petitioner argues that false information in his Parole Violation Report ultimately affected his parole guidelines scoresheet. Because Petitioner's first ground for habeas corpus relief is unclear as to whether he is objecting to his parole revocation or subsequent parole denials, the Court will evaluate Petitioner's claim under both doctrines. Read with the required liberality, Petitioner seeks to assert rights under the Due Process Clause of the Fourteenth Amendment. *See Haines v. Keener*, 404 U.S. 519, 520-21 (1972). The Fourteenth Amendment forbids state actors from depriving "any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV.

In rejecting Petitioner's claim, the Chippewa County Circuit Court stated:

> In this case, a writ of habeas corpus is not a proper remedy for petitioner's allegations that the parole board['s] decision to deny petitioner parole was arbitrary, capricious and contrary to law. There is no right for a prisoner to be released from incarceration before the expiration of a valid sentence. *Shields v. Department of Corrections*, 128 Mich App 380; 340 NW2d 95 (1983). Also, habeas corpus is an alternative remedy and may be refused in the exercise of discretion where full relief may be obtained in other more appropriate proceedings. *Phillips v. Prison Warden*, 153 Mich App 557; 396 NW2d 482 (1986).
>
> ***
>
> The Court has had an opportunity to review the record carefully and has fully considered the contentions of petitioner. No radical defect in jurisdiction has been established and the Parole Board employed proper procedures. Therefore, the Court will not disturb the Parole Board['s] determination of its intention to continue petitioner's incarceration.

(Attach. to Pet., docket #4.)

    1.    **Parole Revocation**

A degree of due process is required prior to the revocation of parole. *Morrissey v. Brewer*, 408 U.S. 471, 481-84 (1972). In *Morrissey v*, 408 U.S. at 481-84, the Supreme Court held that individuals threatened with the revocation of their parole possess a liberty interest that entitles them to minimal due process protections. In defining those minimal due process protections, the Supreme Court recognized two important stages in the parole revocation process - the preliminary hearing and the revocation hearing. *Id.* at 485. The Court stated that a preliminary hearing should be held promptly after the alleged parole violation or arrest to determine whether probable cause exists to hold the parolee for a revocation hearing. *Id.* at 485-87. If probable cause is found to exist, the parolee has a right to a hearing prior to a final decision on revocation by the state parole authority. *Id.* at 487-88. The minimal due process requirements at the revocation hearing stage include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489. The Court emphasized, however, that the second stage of parole revocation should not be equated with a full criminal prosecution. *Id.* The due process requirements for a revocation hearing defined in *Morrissey* are codified in MICH. COMP. LAWS § 791.240a.

Because the revocation of parole is not part of a criminal prosecution, parolees are not entitled to the full panoply of rights given to defendants in criminal proceedings. *Morrissey*, 408 U.S. at 480. The process should be flexible enough to consider evidence that would not necessarily be admissible in adversary criminal proceeding such as letters, affidavits, and hearsay testimony. *Id.* at 489; *see also United States v. Froman*, No. 86-5540, 1987 WL 36965, at *2-3 (6th Cir. Apr. 6, 1987). Unlike criminal proceedings, a parolee need not be found guilty beyond a reasonable doubt before having his parole revoked; rather, the revocation of parole is proper when supported merely by reasonable grounds. *See Morrissey*, 408 U.S. at 490; *Simmons v. Hurley*, No. 95-3168, 1997 WL 14781, at *2 (7th Cir. Jan. 9, 1997).

Petitioner's parole revocation satisfied the due process requirements under *Morrissey*. On April 15, 2002, four days after he tested positive for marijuana and cocaine, Petitioner received a copy of the parole violation charges and a notice of his rights in the preliminary parole violation hearing. (R., 38-39.) On April 18, 2002, Petitioner participated in the preliminary parole violation hearing. (R., 36-37.) At the hearing, Petitioner admitted using marijuana but stated

that he was unaware the marijuana was laced with cocaine. (R., 36-37.) The hearings officer found probable cause on both counts. (R., 36-37.) Petitioner was subsequently arraigned on the parole violation charges. (R., 27.) On May 17, 2002, Petitioner pleaded guilty to count one (use of marijuana) and stood mute to count two (use of cocaine). (R., 27.) At that time, Petitioner acknowledged receiving notice of his right to an attorney and of his right to a formal parole revocation hearing. (R., 28.) Instead of proceeding to a formal revocation hearing, Petitioner entered a plea. (R., 27-28.) In doing so, Petitioner waived his right to cross-examine his parole agent and transformed his revocation hearing into a mitigation hearing. (R., 27.) Any false information in Petitioner's Parole Violation Report did not effect his due process rights under *Morrissey,* 408 U.S. at 489, as Petitioner clearly violated the conditions of his parole. In light of these facts, I recommend denial of Petitioner's revocation claim under the Due Process Clause.

    2.  **Parole Denial**

      a.  **Procedural Due Process**

    To establish a procedural due process violation for a parole denial, a petitioner must prove that (1) he was deprived of a liberty or property interest, and (2) the procedures afforded to protect that interest were insufficient. *Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Petitioner fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty

interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

The decision of the Chippewa County Circuit Court is not an unreasonable application of *Greenholtz*, 442 U.S. at 7. In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, 93 F. App'x 805, 806 (6th Cir. 2004); *Martin v. Ohio Adult Parole Auth.*, 83 F. App'x 114, 155 (6th Cir. 2003); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999).

Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). In addition, the

Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Petitioner has served his fifteen-year maximum sentence, he has no reasonable expectation of liberty. In the absence of a liberty interest, even an allegation of arbitrary or capricious denial of release on parole states no federal claim. *See Haynes*, 1990 WL 41025, at *1. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Petitioner for parole, therefore, implicates no federal right.

In the absence of a liberty interest, Petitioner cannot show that the false information in his Parole Violation Report was relied upon to a constitutionally-significant degree. *See Caldwell v. McNutt*, No. 04-2335, 2006 WL 45275, at *1 (6th Cir. Jan. 10, 2006) ("[E]ven if the Parole Board relied on inaccurate information to deny Caldwell parole, it did not violate any liberty interest protected by the United States Constitution."); *Echlin v. Boland*, No. 03-2309, 2004 WL 2203550, at *2 (6th Cir. Sept. 17, 2004) (prisoner could not bring a § 1983 action to challenge the information considered by the parole board because he has no liberty interest in parole); *see also Draughn v. Green*, No. 97-1263, 1999 WL 164915, at *2 (6th Cir. Mar. 12, 1999) (in order for the Due Process Clause to be implicated, false information in a prisoner's file must be relied on to a constitutionally significant degree); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation). Therefore, I recommend to deny Petitioner's procedural due process claim from the denial of his parole.

b. **Substantive Due Process**

Construing his *pro se* complaint liberally, *see Haines*, 404 U.S. at 520-21, Petitioner also appears to allege that he has been denied substantive due process by the arbitrary actions of the Michigan Parole Board in refusing to follow state law. Petitioner's substantive due process claim is without merit. Substantive due process "prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty, . . . ." *United States v. Salerno,* 481 U.S. 739, 746 (1987) (internal quotation marks and citations omitted). Although substantive due process protects inmates from arbitrary denials of parole based on impermissible criteria such as race, religion, or political beliefs, or frivolous factors, such as eye color, even where a prisoner may not have a protected liberty interest, *see Block v. Potter*, 631 F.2d 233, 236 n.2 (3d Cir. 1980), Petitioner does not present any such allegations here. *See Mayrides v. Chaudhry*, 43 F. App'x 743, 746 (6th Cir. 2002) (considering substantive due process claim in context of parole). Moreover, Petitioner is serving a sentence for first-degree criminal sexual conduct. In light of Petitioner's criminal history, the Michigan Parole Board's decision cannot reasonably be considered to either shock the conscience or interfere with rights implicit in the concept of ordered liberty. Consequently, I recommend to deny Petitioner's substantive due process claim.

B. **Ground II: Rehabilitation Programs**

In his second ground for habeas corpus relief, Petitioner argues that he should have been offered alternative programming before being returned to the Michigan Department of Corrections after his parole violation. The Chippewa County Circuit Court did not address this ground for habeas corpus relief. As stated above, Petitioner does not have a liberty interest in parole.

Further, Petitioner does not have a federally cognizable liberty interest in participating in rehabilitative treatment programs. Federal courts have consistently found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services); *Carter v. Morgan*, No. 97-5580, 1998 WL 69810, at *2 (6th Cir. Feb. 10, 1998) (no constitutional right to educational classes); *Tribell v. Mills*, No. 93-5399, 1994 WL 236499, at *1 (6th Cir. June 1, 1994) ("[N]o constitutional right to vocational or educational programs in prisons"). Under these authorities, I recommend to deny Petitioner's due process claim arising from the Michigan Department of Corrections' decision to deny him admission to a rehabilitative program in lieu of returning him to prison.

### C.   Ground III:  Appeal

In his third ground for habeas corpus relief, Petitioner argues that Michigan law eliminated the right of a prisoner to appeal his or her denial of parole. Once again, Petitioner failed to identify any constitutional violation as to his claim. Petitioner appears to allege that the elimination of his right to appeal violates his due process and equal protection rights under the Fourteenth Amendment. *See Haines*, 404 U.S. at 520-21.

>The Chippewa County Circuit Court addressed the issue as follows:
>
>It is clear that the Michigan Legislature and the Michigan Supreme Court eliminated appeals by leave of parole board decisions by inmates under the Department of Corrections Act, MCL § 791.234; MCR 7.104(D).
>
>As pointed out by [Petitioner], a prisoner's right to file a complaint for habeas corpus is guaranteed by our state constitution. Habeas corpus is available under the proper circumstances. No proper circumstances exist in this case for issuance of a writ of habeas corpus. [Petitioner] attempts to circumvent MCL § 791.234 and MCR 7.104(D) by filing a complaint for habeas corpus. However, the complaint fails to set forth any radical circumstances which would support habeas corpus and where habeas corpus would be proper.

(Attach. to Pet., docket #4.)

Under statutory and rule amendments by the Michigan Legislature and Michigan Supreme Court, respectively, a prisoner no longer has an ability to appeal a parole denial under state statute. The former version of MICH. COMP. LAWS § 791.234(8) provided that the grant or denial of parole by the Michigan Parole Board could be appealed to the circuit court by the prisoner, prosecutor or victim. *See* MICH. COMP. LAWS § 791.234(8) (West. 1999). The new version eliminated the ability of a prisoner to appeal a parole denial, and provides only that a grant of release on parole may be appealed by the prosecutor or the victim. *See* MICH. COMP. LAWS § 791.234(11) (as amended by 1999 Mich. Pub. Acts 191). The legislation was approved on November 24, 1999. Following the lead of the Michigan Legislature, the Michigan Supreme Court amended Michigan Court Rule 7.104, effective March 10, 2000, eliminating the provisions regarding the methods by which a prisoner could appeal a parole denial. *See* MICH. CT. R. 7.104(D)(1), (2)(a). As a result, the Sixth Circuit Court of Appeals has held that a Michigan petitioner's failure to exhaust his challenge to parole procedures is excused under 28 U.S.C. § 2254(b)(1)(B)(i) because Michigan law

does not provide a state corrective process for such a claim. *Jackson v. Jamrog,* 411 F.3d 615, 618 (6th Cir. 2005).

Petitioner's claim that he is deprived of the right to appeal his parole board decision does not implicate due process. As stated above, a lawfully convicted person has no constitutional right to be conditionally released before the expiration of a valid sentence. *Greenholtz*, 442 U.S. at 7. Further, a prisoner does not have a constitutionally protected liberty interest in the procedural requirements of state law where the state's discretion to deny parole is broad, as it is in Michigan. *Sweeton*, 27 F.3d at 1164-165. An equal protection challenge also fails. If Petitioner is arguing that he is being treated differently than prosecutors and victims who may appeal the grant of parole under MICH. COMP. LAWS § 791.234(11), the Sixth Circuit has upheld MICH. COMP. LAWS § 791.234(11) against an equal protection challenge filed by a prisoner. *See Jackson*, 411 F.3d at 618-21.[2] As a result, I recommend to deny Petitioner's due process and equal protection claims as to the elimination of his right to appeal.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.

Date: July 11, 2008

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

---

[2] The *Jackson* court referenced a previous version of the statute, MICH. COMP. LAWS § 791.234(9). This Court cites the current version of the statute, MICH. COMP. LAWS § 791.234(11), which only has been numerically amended since the *Jackson* decision. *See* MICH. COMP. LAWS § 791.234(11) (as amended by 2006 Mich. Pub. Acts 167).

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).